UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

MICHAEL ROBERT MORNING                                 PLAINTIFF

V.                              NO. 4:20-CV-937-JTR

KILOLO KIJAKAZI, Commissioner
Social Security Administration[1]                             DEFENDANT

## ORDER

### I. Introduction

Plaintiff, Michael Robert Morning ("Morning"), applied for disability benefits on October 11, 2017, alleging disability beginning on October 5, 2017. (Tr. at 9). After conducting a hearing, the Administrative Law Judge ("ALJ") denied his application on October 23, 2019. (Tr. at 21). The Appeals Council denied his request for review on July 9, 2020, making the ALJ's denial of Morning's application for benefits the final decision of the Commissioner. (Tr. at 1).

For the reasons stated below, the Court[2] reverses the ALJ's decision and remands for further review.

---

[1] On July 9, 2021, Kilolo Kijakazi became the Acting Commissioner of the Social Security Administration and is substituted as the Defendant in this action. Fed. R. Civ. P. 25(d).

[2] The parties have consented in writing to the jurisdiction of a United States Magistrate Judge. *Doc. 4*.

## II. The Commissioner's Decision

The ALJ found that Morning had not engaged in substantial gainful activity since the alleged onset date of October 5, 2017.[3] (Tr. at 11). The ALJ found, at Step Two, that Morning had the following severe impairments: disorder of the back, obesity, and mood disorder. *Id.*

After finding that Morning's impairments did not meet or equal a listed impairment (Tr. at 12–13), the ALJ determined that Morning had the residual functional capacity ("RFC") to perform work at the light exertional level, with additional limitations. (Tr. at 14). He can perform unskilled work where: (1) the interpersonal contact is incidental to the work performed; (2) the complexity of tasks is learned and performed by rote; and (3) the work involves few variables, requires little independent judgment, and the supervision required is simple, direct, and concrete. *Id.*

The ALJ determined that Morning was unable to perform any of his past relevant work. (Tr. at 19). At Step Five, the ALJ relied upon Vocational Expert ("VE") testimony to find that, based on Morning's age, education, work experience

---

[3] The ALJ followed the required five-step sequence to determine: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)–(g), 416.920(a)–(g).

and RFC, jobs existed in significant numbers in the national economy that he could perform, including positions as poultry dresser and small products assembler. (Tr. at 20). Thus, the ALJ concluded that Morning was not disabled. *Id.*

### III. Discussion

#### A. Standard of Review

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether it is based on legal error. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); *see also* 42 U.S.C. § 405(g). While "substantial evidence" is that which a reasonable mind might accept as adequate to support a conclusion, "substantial evidence on the record as a whole" requires a court to engage in a more scrutinizing analysis:

> "[O]ur review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision; we also take into account whatever in the record fairly detracts from that decision." Reversal is not warranted, however, "merely because substantial evidence would have supported an opposite decision."

*Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005) (citations omitted).

In clarifying the "substantial evidence" standard applicable to review of administrative decisions, the Supreme Court has explained: "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence . . . 'is more than a mere scintilla.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co.*

*v. NLRB*, 59 S. Ct. 206, 217 (1938)). "It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.*

It is not the task of this Court to review the evidence and make an independent decision. Neither is it to reverse the decision of the ALJ because there is evidence in the record which contradicts his findings. The test is whether there is substantial evidence in the record as a whole which supports the decision of the ALJ. *Miller*, 784 F.3d. at 477.

B. Morning's Arguments on Appeal

Morning contends that evidence supporting the ALJ's decision to deny his application for benefits is less than substantial. He argues that the ALJ did not properly consider Morning's alleged illiteracy and that the ALJ erred when he found Morning's migraine headaches to be non-severe at Step Two. The Court finds support for Morning's second argument, and limits its discussion thereto.[4]

Morning complained of migraine headaches that interfered with daily functioning, and the record supports that contention. In October 2016, Morning reported headaches with neck pain. (Tr. at 121). In December 2017, his migraines worsened. His PCP noted complaints of uncontrolled migraines (Morning

---

[4] *See Noerper v. Saul*, 964 F.3d 738, 741 (8th Cir. 2020) ("Although our detailed discussion is targeted, we have considered the claimant's arguments and the record as a whole as to all of her impairments and their cumulative effect on her limitations.")

4

consistently took Imitrex as prescribed), with severity of 10 out of 10. (Tr. at 529–534). The migraines were accompanied by an aura and nausea, with both phonophobia and photophobia.[5] *Id*. They occurred daily. *Id*. The PCP observed that the headaches had an effect on social functioning. *Id*. On December 5, 2017, Morning reported to his PCP that his headaches were worse, with visual changes. (Tr. at 534–536). Additionally, the record contains a "Treating Physician's Migraine Headache Form," dated December 5, 2017, which stated that Morning had a headache once a week, accompanied by throbbing and pulsating. (Tr. at 501). The UAMS doctor, whose signature is illegible, stated that the migraines would interfere with Morning's ability to work. *Id*.

Also, in June, July, and August 2018, Morning reported problems with headaches. (Tr. at 622–627). On August 10, 2018, he said that the headaches were worsening and that they occurred daily and lasted all day, and he said that light aggravated his symptoms. (Tr. at 622–623). Doctors continued to prescribe Imitrex. (Tr. at 622–625). At the hearing, Morning said he would have to lie down in a dark room until his headaches receded. (Tr. at 36–47). A friend who lived with Morning

---

[5] Rather than using laboratory tests looking for direct medical evidence, doctors diagnose migraines through medical signs and symptoms such as nausea, vomiting, photophobia, and sensitivity to sound. *Carrier v. Berryhill*, No. 15-CV-5086-JLV, 2017 WL 885019, at *1 (D.S.D. Mar. 6, 2017). Morning's doctors routinely listed migraines as a diagnosis.

testified at the hearing, and she explained that migraines negatively affected Morning. (Tr. at 58).

The ALJ did not discuss any of this evidence related to migraine headaches. He did not mention the Physician's Headache Form. Even the Disability Determination Services medical experts noted that Morning's headaches were worsening, and observed that records showed the headaches could interfere with Morning's ability to work. (Tr. at 110–118). The ALJ did not address these medical experts' findings about headaches.

Instead, the ALJ ruled migraines to be non-severe at Step Two, merely stating that they "do not cause more than minimal limitations on the claimant's ability to perform basic work-related activities."[6] (Tr. at 12). There was no further discussion of migraines. The ALJ did not discuss symptoms, diagnosis, or treatment, or any of the doctor visits where Morning complained of headaches. He also did not discuss either Morning's or the witness's testimony about migraines.

Courts have found error when the administrative record contains evidence of diagnosis and treatment of migraines, and the ALJ does not find the condition to be severe. In *Deardorff v. Comm'r*, the claimant had very similar symptoms related to

---

[6] Step Two involves a determination of whether the claimant has an impairment or combination of impairments which is "severe" and meets the duration requirement. 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). If not, benefits are denied. *Id*. A "severe" impairment significantly limits a claimant's ability to perform basic work activities. 20 C.F.R. §§ 404.1520(c); 416.920(c).

migraines as Morning did, with history of treatment that did not help, but the ALJ did not discuss this evidence or find the impairment to be severe. *Deardorff v. Comm'r.*, 762 Fed. Appx. 484, 486 (10th Cir. 2019). The Court held the ALJ committed error by not discussing the significant evidence of Mr. Deardorff's headaches and how they might impact his functional abilities. *Id.* at 488–89. The Court also rejected the district court's "post-hoc rationale" for excusing the ALJ's error in ignoring the significant evidence supporting the claimant's limitations caused by migraines.[7] *Id.* at 490. *Accord: Vancil v. Saul*, No. 4:18-CV-55-NAB, 2019 WL 4750443 (E.D. Mo. Sept. 30, 2019); *Skaggs v. Berryhill*, No. 4:16-CV-228-NAB, 2017 WL 5592880 (E.D. Mo. Nov. 21, 2017); *Carrier v. Berryhill, supra.* Here, the ALJ failed to discuss *any* of the evidence regarding Morning's migraine headaches at Step Two. Accordingly, the ALJ committed reversable error and the case must be remanded for further review.

## IV. Conclusion

It is not the task of this Court to review the evidence and make an independent decision. Neither is it to reverse the decision of the ALJ because there is evidence in the record which contradicts his findings. The test is whether there is substantial

---

[7] In this case, Morning's attorney points out that, in the Commissioner's Brief, she engaged in post-hoc rationalization by citing to the very evidence that the ALJ ignored in reaching his decision. *Doc. 14.* It is the ALJ's job to discuss and weigh the medical evidence supporting his decision, and, when that does not take place, the ALJ's error cannot be cured by the "post-hoc" rationalizations of the Commissioner.

evidence in the record as a whole which supports the decision of the ALJ. *Miller*, 784 F.3d at 477). The Court has reviewed the entire record, including the briefs, the ALJ's decision, and the transcript of the hearing. The Court finds that the ALJ's decision is not supported by substantial evidence, because he erred at Step Two.

IT IS THEREFORE ORDERED that the final decision of the Commissioner is REVERSED and the case is REMANDED for further review.

DATED this 7th day of January, 2022.

_____
UNITED STATES MAGISTRATE JUDGE